# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

Por Moua,                                    **Civil No. 13-CV-1470 (JRT/SER)**

        Petitioner,

v.                                           **REPORT AND RECOMMENDATION**

State of Minnesota,

        Respondent.

_____

    Por Moua, *Pro Se*, 003135, Sherburne County Jail, 13880 Business Center Drive Northwest, Elk River, Minnesota 55330.

    Matthew Frank and James B. Early, Esqs., Minnesota Attorney General's Office, Suite 1800, 445 Minnesota Street, St. Paul, Minnesota 55101, for Respondent.

    Peter R. Marker, Esq., Ramsey County Attorney's Office, 50 Kellogg Boulevard West, Suite 315, St. Paul, Minnesota 55102, for Respondent.

_____

STEVEN E. RAU, United States Magistrate Judge

    The above-captioned case comes before the undersigned on Por Moua's ("Moua") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 ("Petition") [Doc. 1], and the State of Minnesota's (the "State") Motion to Dismiss the Petition ("Motion to Dismiss.") [Doc. No. 7]. This matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends denying Moua's Petition and granting the State's Motion to Dismiss.

## I.      BACKGROUND

    On July 23, 2010, Moua bit his former girlfriend, L.Y., on the face and then fled taking L.Y.'s cellular phone with him. *State v. Moua*, 2012 WL 2505744, at *1 (Minn. Ct. App. July 2, 2012). L.Y. then called for emergency assistance and was transported to the hospital where she

was treated for "a very ragged-edged wound . . . [with] a skin flap that was only partially left attached." *Id.* (quotations omitted).  Moua was arrested and charged with first-degree assault in violation of Minnesota Statute Section 609.221 subdivision 1.[1]  *Id.*

The Minnesota Court of Appeals summarized the relevant facts that occurred after Moua's arrest.

> St. Paul Police Sergeant Paul Meffert conducted a custodial interview. After gathering biographical information from Moua, [Sergeant] Meffert advised Moua of his constitutional rights, pursuant to *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630 (1966), using a form placed on the table so that Moua could read along.  After each statement regarding his constitutional rights, Moua responded to [Sergeant] Meffert in the affirmative.  The following exchange then occurred:
>
> Q [[Sergeant] Meffert]: And then this just says the above rights have been read to me. I have initialed each paragraph to show that I understand each of my rights.  I have received a copy of this form.  You understand those, I need your signature by this one, your initials by the little ones that you said yes to and then I will sign it and give you a copy of it (clears throat).
>
> A [Moua]: I will have to wait before I sign it.
>
> Q: You'll have to wait?
>
> A: Mm-hmm (affirmative).
>
> Q: It's just acknowledging whether you understand your rights or not.
>
> A: Yeah.  I confused [sic] about my rights.
>
> Q: You're confused about your rights?
>
> A: Yes.
>
> Q: I guess we'll end this interview then.
>
> (Tape stops)
>
> (Tape begins again)

---

[1]     Minnesota Statute Section 609.221 subdiv. 1 provides, "[w]hoever assaults another and inflicts great bodily harm may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $30,000, or both."

> A: I will be cooperate [sic] with you.
>
> Q: Okay.
>
> A: I want to be, um, [sic] but you have to be honest with me.
>
> Q: Okay. Let's sign the form and we can talk. You can't talk to me until you acknowledge that you have your rights. Can you initial each one of those for me? Okay.
>
> After Moua initialed and signed the form, he gave a lengthy statement. In the statement, Moua admitted that he "slid [his] teeth to her face" and cut L.Y.  But he maintained that the injury was accidentally inflicted during his attempt to kiss her.

*Moua*, 2012 WL 2505744, at *1.  The Minnesota Court of Appeals further explained, in a footnote, what happened when the tape recorder was turned off; "[t]he tape recorder was turned off. [Sergeant] Meffert stood up and walked toward the door to leave. Moua told [Sergeant] Meffert that he wanted to be truthful.  After this statement, [Sergeant] Meffert again turned on the tape recorder, which had been off for five to ten seconds." *Id.* at *1 n.2.

The State later added charges of third-degree assault in violation of Minnesota Statute Section 609.223 subdivision 1 and felony domestic assault in violation of Minnesota Statute Section 609.2242 subdivision 4.[2]  *Id.* at *7 n.1.  A jury found Moua guilty of all three charged offenses and he was sentenced to 175 months of imprisonment.[3]  *Id.* at *1.

---

[2]     Minnesota Statute Section 609.223 subdivision 1 provides, "[w]hoever assaults another and inflicts substantial bodily harm may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both."
    Minnesota Statute Section 609.2242 subdivision 4 provides, "[w]hoever violates the provisions of this section or section 609.224, subdivision 1, within ten years of the first of any combination of two or more previous qualified domestic violence-related offense convictions or adjudications of delinquency is guilty of a felony and may be sentenced to imprisonment for not more than five years or payment of a fine of not more than $10,000, or both."

[3]     The Minnesota Court of Appeals addressed the fact that Moua was convicted of both first-degree and third-degree assault although it was not raised on appeal.  *Moua*, 2012 WL 2505744, at *7 n.5.  The Minnesota Court of Appeals explained that:

Moua appealed his conviction to the Minnesota Court of Appeals, where he argued that his conviction should be reversed because: (1) the district court failed to suppress his statements to police because he is a person disabled in communication and was not provided with an interpreter and he did not validly waive his *Miranda* rights;[4] (2) the evidence was insufficient to sustain his conviction for first-degree assault because the State did not prove beyond a reasonable doubt that Moua inflicted great bodily harm on L.Y; and (3) the district court should not have permitted the State to impeach Moua with evidence of three prior convictions.  *Id.* at *2–7.  In addition to these arguments that were advanced by Moua's attorneys on appeal, Moua raised several additional issues on appeal in his supplemental *pro se* brief.  *Id.* at *7.

At the Minnesota Court of Appeals, Moua challenged the district court's decision not to suppress his statements made to Sergeant Meffert arguing that he is a person disabled in communication and he should have been provided an interpreter before any interrogation.  *Id.* at *2.  The Minnesota Court of Appeals rejected Moua's argument, finding substantial evidence in

---

We observe that the district court adjudicated Moua's convictions of both first-degree assault and third-degree assault.  Under Minnesota law, a defendant may not be convicted of both the crime charged and an included offense. An included offense includes a "lesser degree of the same crime."  Because third-degree assault is a lesser-included offense of first-degree assault, Moua's conviction of third-degree assault is not authorized by law. Although this issue is not raised on appeal, the district court may, at any time, correct a sentence that is not authorized by law.

*Id.* (internal citations omitted).  The Minnesota Court of Appeals affirmed Moua's conviction and did not remand.  *See id.*

[4]    A person disabled in communication is defined by Minnesota Statute Section 611.31 as [A] person who: (1) because of a hearing, speech or other communication disorder, or (2) because of difficulty in speaking or comprehending the English language, cannot fully understand the proceedings or any charges made against the person, or the seizure of the person's property, or is incapable of presenting or assisting in the presentation of a defense.

Minnesota Statute Section 611.32 requires that such a person be provided with an interpreter during an interrogation or taking of a statement by law enforcement officers.

the record supporting the district court's conclusion that Moua was not a person disabled in communication. *Id.* at *2–3. The Minnesota Court of Appeals based its decision on the fact that Moua was interviewed by Sergeant Meffert with no difficulties in comprehension or responsiveness, that Moua communicated effectively in English to the court on multiple occasions, and when Moua was provided an interpreter during the suppression hearing, Moua explained to the court that he did not want to use the language interpretation headset because "he wanted 'to listen to hear what [the district court] was saying at the same time.'" *Id.* at *2. Moreover, the Minnesota Court of Appeals explained that Moua had been in the United States for nearly thirty years, attended school in the United States from elementary school through high school graduation, and was working two jobs at the time of the offense where there was no suggestion Moua used any language other than English. *Id.*

Moua also challenged the district court's decision not to suppress his statements made to Sergeant Meffert by arguing that he did not provide a knowing and intelligent waiver of his rights because he expressed confusion and was interviewed later without any explanation of his rights. *Id.* at *3. The Minnesota Court of Appeals, after a *de novo* review and in light of "Moua's prior experience with criminal investigations and prosecutions, his education and work experience, and his length of time in the United States," found the district court's admission of Moua's statements proper. *Id.* at *3–4. In reaching its decision, the Minnesota Court of Appeals explained that Moua was familiar with the criminal justice system because he had six previous criminal convictions and had exercised effectively his constitutional rights by requesting his lawyer's presence before a custodial police interrogation on at least one previous occasion. *Id.* at *3. In addition, the Minnesota Court of Appeals noted that Sergeant Meffert, as evidenced by the audio recording, conducted his interview of Moua in a non-threatening manner and tone. *Id.*

The Minnesota Court of Appeals also observed that Moua's expression of confusion followed his admission that he understood his rights.  *Id.*  Once Moua expressed confusion, Sergeant Meffert stopped the interview, and the interview resumed only after Moua reinitiated the conversation. *Id.*  At that point, Moua expressed his intention to cooperate and be truthful and signed and initialed a *Miranda* waiver form.  *Id.*  The Minnesota Court of Appeals also dismissed Moua's argument that the police should have explained his constitutional rights to him after he expressed confusion because the court explained that requiring police to provide such an explanation could have led to legal misstatements and assertions that there was coercion.  *Id.*

Moua also argued to the Minnesota Court of Appeals that the State failed to prove beyond a reasonable doubt that "he inflicted great bodily harm on L.Y."  *Id.* at *4.  After analysis of the record to "determine whether the jury reasonably could find the defendant guilty of the charge offense based on the facts in the record and the legitimate inference that can be drawn from the facts[,]" the appellate court found sufficient evidence to prove beyond a reasonable doubt that Moua committed first-degree assault.  *Id.* (citations omitted).  The Minnesota Court of Appeals found that the photographs of L.Y's bite-shaped wound that were admitted into evidence, the testimony of L.Y.'s plastic and reconstructive surgeon that L.Y.'s wound required "a deep layer of suture" and description of the thick and noticeable nature of the scar, and the jury's ability to observe L.Y.'s scar when L.Y. testified in court constituted ample evidence to prove that Moua was guilty of first-degree assault beyond a reasonable doubt.  *Id.*

Moua also argued that the district court should not have permitted his impeachment with evidence from three of his prior convictions.  *Id.* at *5.  The Minnesota Court of Appeals concluded that the district court's admission of the impeachment evidence did not warrant reversal of Moua's conviction.  *Id.* at *5–7.  Moua challenged the district court's admission of

his conviction for unlawful sexual intercourse, arguing that the court incorrectly found that the offense had great impeachment value and that the offense was not similar to the charged offense. *Id.* at *5.  The Minnesota Court of Appeals determined that the conviction had impeachment value as it was probative of Moua's credibility. *Id.* at *5.  The Minnesota Court of Appeals also found that, as presented to the jury, the unlawful sexual intercourse conviction was dissimilar to the charged offense. *Id.* at *6.  Concerning the district court's admission of Moua's prior conviction for failure to register as a predatory offender, Moua argued that the district court's admission of the conviction was improper because the district court did not make express findings on each of the *Jones* factors, which govern the determination of whether the probative value of the evidence outweighs its prejudicial effect.[5] *Id.*  The Minnesota Court of Appeals dismissed Moua's argument because it found that "Moua's conviction for failure to register as a [predatory] offender would have been admissible after a complete application of the *Jones* factors, [thus] any deficiency in the district court's on-the-record analysis [was] harmless error." *Id.*  Finally, Moua argued that his prior conviction of terroristic threats should not have been admitted by the district court because the court erroneously calculated the age of the conviction. *Id.*  The Minnesota Court of Appeals applied a plain error analysis because Moua did not object to the admission of the conviction on this ground at the district court, and found that the district court did plainly err in calculating the age of the conviction. *Id.* at *6–7.  The Minnesota Court of Appeals, however, found that the district court's error did not affect Moua's substantial rights

---

[5]      The *Jones* factors include:

> (1) [T]he impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*State v. Jones*, 271 N.W.2d 534, 537–38 (Minn. 1978).

and accordingly did not warrant a reversal of his conviction.  *Id.* at \*7.

The Minnesota Court of Appeals noted that Moua "raise[d] several issues in his *pro se* supplemental brief[,]" but concluded that Moua forfeited his *pro se* claims.  *Id.* at \*7.  The Minnesota Court of Appeals found forfeiture warranted because "Moua fail[ed] to brief the issues adequately or provide any legal authority in support of his arguments, and prejudicial error [was] not obvious on mere inspection[.]"  *Id.*

The Minnesota Court of Appeals, thus, affirmed Moua's conviction.  *Id.*  The Minnesota Supreme Court denied Moua's request for review.  (Order Denying Review, *State v. Moua*, 2012 WL 2505744 (Minn. Sept. 25, 2012), Ex. 8) [Doc. No. 10-3 at 260].[6]

Moua filed his Petition for a Writ of Habeas Corpus alleging the following grounds for relief:  (1) that he did not understand English which negatively impacted his case; (2) that the trial court violated his rights to a speedy trial; (3) ineffective assistance of trial counsel; and (4) prosecutorial misconduct.[7]   (Pet. at 5–14).   The State argued that Moua's claims were

---

[6]    The Court uses the pagination assigned in the lower right-hand corner of the pages of Document Number 10 because that pagination is continuous despite the existence of Document Numbers 10-2 and 10-3.

[7]    The thrust of Moua's *pro se* Petition is his challenge to the representation he received by his trial counsel, Lyndee Kamrath.  *See* (Pet.).  Moua does not raise any arguments alleging ineffective assistance of counsel by the attorneys that represented him on appeal to the Minnesota Court of Appeals, Jonathan P. Schmidt, Amie E.P. Sayler, or Leah Ceee O. Boomsma.  *See* (*id.*).  In addition, the Petition also raises arguments about how Moua's failure to understand English resulted in a violation of his rights and that his right to a speedy trial was violated.  (*Id.* at 3, 5, 7, 10–11, 14).  Although the Petition lists other arguments that Moua's appellate counsel advanced on appeal to the Minnesota Court of Appeals, Moua makes no argument on these issues, he just lists them in his Petition.  *See* (*id.* at 6) (listing "insufficient evidence" and "probable cause challenge[,]" arguably both of which were raised in Moua's counseled brief to the Minnesota Court of Appeals, and providing no further argument and/or discussion on the issues).

Prosecutorial misconduct was not in Moua's Petition but was in his additional submissions to the Court.  *See, e.g.*, (Prosecutor, Illegal Obtained Priority Evidence of Impeachment) [Doc. No. 16].  Because the Court reads *pro se* filings liberally, it will also address this argument.  *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

procedurally defaulted and thus not subject to federal habeas corpus review.  (Mot. to Dismiss).

Since filing his Petition, Moua has made multiple submissions to the Court.  *See Appendix*.  The Court reviewed all of Moua's submissions and provides a summary of the submissions in the Appendix attached to this Report and Recommendation.  For the sake of clarity, only those submissions to which the Court refers in its discussion are summarized here.  Not all of Moua's submissions are summarized here because many of them are repetitive and/or have no bearing on Moua's Petition.  Moua submitted a document entitled "Prosecutorial's Memorandum Notice Motion for Prosecutor Misconduct, Violations Petitioner's Constitution Right," where Moua claimed his constitutional right to a speedy trial was violated and constitutes prosecutorial misconduct in violation of his federal and state constitutional rights.  [Doc. No. 15]. Moua submitted a document entitled "Prosecutor, Illegal Obtained Priority Evidence of Impeachment," where he argues that the Prosecutor improperly used his past convictions against him for impeachment at his trial, alleges racial and ethnic discrimination and also advances arguments about the evidence in his case.  [Doc. No. 16].  In a document entitled "Ineffective Assistance of Claim and State Court Documents Filed," Moua argues, *inter alia*, that he received incompetent representation by Lyndee Kamrath for failure to investigate, failure to consult with Moua, failure to challenge to prosecution, claims related to presentation in plea bargaining, failure to challenge the composition of the jury, failure to object to the prosecution, failure to make post-conviction motions, and because she had a pecuniary interest in possible future business that created a conflict of interest.  [Doc. No. 19].  Moua also included a Motion for

---

The State only addressed Moua's ineffective assistance of counsel claims in its Motion to Dismiss, which was filed before Moua's additional submissions to the Court.  But the Court finds that Moua would not be eligible for federal habeas relief based on any of his additional arguments regardless of any response by the State.  The State did not seek to respond to Moua's additional submissions and the Court did not order the State to respond because response was unnecessary.

Dismissal of Kamrath that he filed with the state court where he seeks dismissal of Kamrath for ineffective assistance of counsel and argues that she told him to plead guilty, has not adequately represented him, and has many conflicts of interest.  (*Id.* at 6–13).

## II.   DISCUSSION

### A.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes the standards that govern substantive review of Moua's habeas claims.  The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Eighth Circuit has explained:

> A state court decision is "contrary to" clearly established federal law if it either "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts." A state court "unreasonably applies" Supreme Court precedent if it "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011) *cert. denied*, 132 S. Ct. 763 (U.S. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)).

A writ of habeas corpus can also be granted if the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  In other words, habeas relief

can be available if the conviction is based on findings of fact that could not reasonably be derived from the state court evidentiary record.  *See id.*

Needless to say, a federal district court is not allowed to conduct its own *de novo* review of a prisoner's constitutional claims.  *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter.").  Rather, "AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt . . . ."  *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (internal citations and quotations omitted).  Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific state court error.  *See, e.g.*, *Harrington v. Richter*, 131 S. Ct. 770, 785–86 (2011) (explaining the burdens faced by a federal habeas petitioner seeking relief based on an alleged error by the state court).  Moreover, the petitioner must show that the error is one that is actionable under § 2254(d).  *See id.*  The petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786–87.

### B.   Procedural Default

A federal district court may entertain a state prisoner's application for a writ of habeas corpus only when the petitioner has exhausted the state court remedies.  28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Gill v. Swanson*, No. 07-4555 (JMR/AJB), 2008 WL 4371378, at *2–3. (D. Minn. Sept. 22, 2008).  The exhaustion requirement has been summarized as follows:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies thereby giving the State the opportunity to pass upon and

> correct alleged violations of its prisoners' federal rights.  To provide the State
> with the necessary opportunity, the prisoner must fairly present his claim in each
> appropriate state court (including a state supreme court with powers of
> discretionary review), thereby alerting that court to the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal citations and quotations omitted).

Accordingly, to exhaust state court remedies, a petitioner must fairly present his constitutional

claims to the highest available state court before seeking relief in federal court. *O'Sullivan*, 526

U.S. at 845.  "A petitioner meets the fair presentation requirement if the state court rules on the

merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the

merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999) (citation omitted).  Thus, a

claim has not been fairly presented if a state appellate court expressly declines to address it on

the merits because the petitioner violated state procedural rules.  *Hall v. Delo*, 41 F.3d 1248,

1250 (8th Cir. 1994).

When a petition contains claims that have not been fairly presented, a court must

determine whether state procedural rules would allow hearing on the merits.  *Gill*, 2008 WL

4371378, at *3 (citations omitted).  If the state's procedural rules preclude a hearing on the

merits, the petitioner has procedurally defaulted and is barred from federal habeas relief unless

either cause and prejudice or a miscarriage of justice can be shown.  *See, e.g.*, *id.* (citing *McCall*,

114 F.3d at 757).  Generally, "[w]hen a state court remedy is available for a state prisoner's

unexhausted claim, the federal habeas court must defer action until the claim is exhausted, either

by dismissing the federal petition without prejudice or by using the 'stay and abeyance'

procedure . . . ." *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005).  When a petitioner has

not exhausted the state court remedies for a claim and state procedural rules preclude any further

attempts to satisfy the exhaustion requirement as to that claim, then the claim is not truly

unexhausted; rather, the claim is procedurally barred from federal habeas relief.  *Coleman v.*

*Thompson*, 501 U.S. 722, 750 (1991); *McCall*, 114 F.3d at 757.   In addition, Minnesota law provides that all matters raised in a petitioner's direct appeal and all claims known but not raised, are barred from consideration in a subsequent post-conviction petition.   *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (citing *State v. Knaffla*, 243 N.W.2d 737, 741 (1976)).   A petitioner can avoid the state court procedural bar only by demonstrating cause for default and actual prejudice as a result of the violation of federal law or by showing actual innocence (also called the miscarriage of justice exception).   *Schlup v. Delo*, 513 U.S. 298, 314–17 (1995); *McCall*, 114 F.3d at 758.

### 1.   Ineffective Assistance of Trial Counsel[8]

Moua argues that his trial counsel, Lyndee Kamrath, did not adequately represent him for a number of reasons.  *See, e.g.*, (Pet.).   First, Moua contends that his trial counsel forced him to testify at trial.   (Pet. at 2, 8); (Moua's Trial Testimony, Attached to Supplemental App. To State's Mem. in Supp. of Mot. to Dismiss) [Doc. No. 26-1 at 51–91]. Second, Moua argues that his trial counsel was unprepared for the case.   (*Id.* at 5).   Third, Moua contends that his trial counsel lied to him.   (*Id.* at 3, 8).   Fourth, Moua argues that his trial counsel demanded that he not speak at his evidentiary hearing.   (*Id.* at 3).   Fifth, Moua argues that his trial counsel failed to investigate his case.   (*Id.* at 5).   Moua also contends that his trial counsel told him to fire her in the middle of the case and allowed the victim's friend to listen to a conversation between Moua and counsel about the case.   (*Id.* at 8).   Moua also raised additional arguments in his supplemental submission to the Court entitled "Ineffective Assistance Claim and State Court Documents Filed," including allegations that his trial counsel failed to consult with Moua, to

---

[8]     All of Moua's ineffective assistance of counsel claims relate to Ms. Lyndee Kamrath who was his counsel at the trial court level not at the appellate level. *See, e.g.*, (Tr. of Appeal Volume II, Attached to Supplemental App. to the State's Mem. in Supp. of Mot. to Dismiss) [Doc. No. 25-1 at 1].

challenge to prosecution, to challenge the composition of the jury, to object to the prosecution, or to make post-conviction motions. [Doc. No. 19]. Moua also contends that his trial counsel did not adequately represent him in plea bargaining, had a pecuniary interest in possible future business that created a conflict of interest, and had many conflicts of interest. (*Id.*).

The State argues that Moua's ineffective assistance of counsel claims are procedurally defaulted because "they were forfeited on direct appeal and never presented to the Minnesota Supreme Court at all, let alone as federal constitutional issues, and . . . they may not be raised at this time in a post[-]conviction proceeding." (State's Mem. in Supp. of Mot. to Dismiss) [Doc. No. 8 at 6]. The State argues that Moua raised many issues including what seemed to be claims of ineffective assistance of counsel for inadequate investigation and for failure to object to evidence in his *pro se* supplemental brief to the Minnesota Court of Appeals. (*Id.* at 5). The Minnesota Court of Appeals reviewed Moua's *pro se* claims for prejudicial error and found none, thus, it determined that his claims were forfeited because they were unsupported by legal authority or argument. *Moua*, 2012 WL 2505744, at *7. In addition, the State argues further that even if not all of Moua's ineffective assistance of counsel claims were raised in his direct appeal, they are still procedurally defaulted for federal habeas purposes because Moua could have raised these arguments at the time of his direct appeal. (State's Mem. in Supp. of Mot. to Dismiss at 6).

In the brief prepared by Moua's appellate counsel to the Minnesota Court of Appeals, Moua's appellate counsel did not raise an ineffective assistance of trial counsel claim; nonetheless a review of Moua's *pro se* supplemental brief to the Minnesota Court of Appeals convinces the Court that Moua argued an ineffective assistance of trial counsel claim in that submission. *See* (Moua's *Pro Se* Supplemental Br. to the Minnesota Court of Appeals, Appendix to the State's Mem. in Supp. of Mot. to Dismiss) [Doc. No. 10-2 at 95–145]. In his

14

*pro se* supplemental brief, Moua raised many of the same arguments that he now raises as supporting his ineffective assistance of counsel claim. *See* (*id.*). For example, Moua's arguments in his *pro se* supplemental brief charged his trial counsel with not investigating the case properly. (*Id.* at 140–41). In addition, Moua argued that his trial counsel failed to make objections that Moua believed were warranted, failed to object to the prosecution, and failed to object to the use of previous conviction evidence against Moua. (*Id.* at 143–44). Moua failed to raise these ineffective assistance of counsel arguments in his petition for review to the Minnesota Supreme Court. *See* (Moua's Pet. for Review to the Minn. Supreme Ct., App. to the State's Mem. in Supp. of Mot. to Dismiss) [Doc. No. 10-3 at 211–219].

The Minnesota Court of Appeals reviewed Moua's *pro se* supplemental brief and found that it failed to address adequately the issues presented and, because there was no obvious prejudicial error from an inspection; the Minnesota Court of Appeals ruled that Moua forfeited his *pro se* claims. *Moua*, 2012 WL 2505744, at *7. Because Moua failed to properly raise ineffective assistance of counsel claims to the Minnesota Court of Appeals and failed to raise the issues at all to the Minnesota Supreme Court, Moua's arguments are unexhausted. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (explaining that federal constitutional issues must be fairly presented "in each appropriate state court (including a state supreme court with powers of discretionary review) thereby alerting that court to the federal nature of the claim.").

 Because the Court finds that Moua's ineffective assistance of counsel claims are unexhausted, the Court must now determine "whether state procedural rules would allow hearing on the merits in a state court proceeding." *McCall*, 114 F.3d at 757. Petitioner has procedurally defaulted and is also barred from federal habeas relief if the state's procedural rules preclude a hearing on the merits. *Id.*; *Gill*, 2008 WL 4371378 at *3. "Minnesota law provides that once the

petitioner has directly appealed his sentence 'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.'" *McCall*, 114 F.3d at 757.  All of Moua's ineffective assistance of trial counsel claims to the state courts that he now raises in his Petition could have been raised at the time of his direct appeal, and thus, Minnesota law precludes any further state court review of the claims.   *See id.*; *Gill*, 2008 WL 4371378 at *3.   Because Minnesota law precludes further state review, Moua's ineffective assistance of counsel claims are barred from federal habeas review unless cause and prejudice or a miscarriage of justice can be shown.  Moua has not made those arguments and the record does establish cause and prejudice or a miscarriage of justice.

### 2.     Speed Trial Violation/Prosecutorial Misconduct

Moua argues in his Petition that his right to a speedy trial was violated.  (Pet. at 3).  Moua also raises this argument in his submission to the Court entitled "Prosecutorial's Mem. Notice for Prosecutor Misconduct," stating that a violation of his speedy trial right was prosecutorial misconduct in violation of his federal and state constitutional rights.  [Doc. No. 15].  Moua also raised this claim in his *pro se* supplemental brief to the Minnesota Court of Appeals.  (Moua's *Pro Se* Supplemental Br. to Minn. Ct. App. at 113–14).   The Minnesota Court of Appeals rejected all of the issues raised in Moua's *pro se* supplemental brief as forfeited because no legal authority was cited in support of the claims.  *Moua*, 2012 WL 2505744, at *7.  Moua failed to raise his speedy trial/prosecutorial misconduct argument to the Minnesota Supreme Court; thus, these claims are unexhausted.  *See Gill*, 2008 WL 4371378, at *2–3; (Moua's Pet. for Review to the Minn. Supreme Ct.).

Moua did not fairly present his speedy trial/prosecutorial misconduct claims to the Minnesota state courts when the claims were known at the time of appeal because the conduct at

issue occurred at trial.  *See McCall*, 114 F.3d at 757.  These claims are precluded from additional review in Minnesota state courts under the same Minnesota law, outlined above, that prevented rehearing of Moua's ineffective assistance of counsel claims; Moua's speedy trial/prosecutorial misconduct claims are therefore procedurally barred.  Moua's speedy trial violation/prosecutorial misconduct arguments, thus, are also barred from federal habeas review unless cause and prejudice or a miscarriage of justice can be shown.  Moua has not made those arguments and the record does establish cause and prejudice or a miscarriage of justice.

### 3.  Prosecutorial Misconduct[9]

Moua argues that the use of evidence of his past convictions for impeachment at his trial constituted prosecutorial misconduct.  *See* [Doc. No. 16].  Upon a liberal reading, required for *pro se* submissions, the Court finds that Moua is attempting to challenge the use of prior crimes as impeachment evidence against him, and addresses this argument.  *See Stone*, 364 F.3d at 914.

Moua argues that before trial, the parties were in agreement that his convictions from the previous ten to fifteen years would not be allowed to be used as impeachment evidence against him.  [Doc. No. 16 at 1].  Notwithstanding this agreement, Moua contends such convictions were used to impeach him, violating his constitutional rights.  *See* (*id.* at 1–7).

A similar argument was raised in Moua's counseled brief to the Minnesota Court of Appeals and to the Minnesota Supreme Court.  (Moua's Br. to the Minn. Ct. App. at 8, 29–35); (Moua's Pet. to the Minn. Supreme Ct. at 213, 218).  Moua, however, did not present this

---

[9]     To the extent Moua is making a different argument about which of his rights were violated by the use of his prior convictions as impeachment, these claims are unexhausted because they were not raised on appeal to the state courts and are also procedurally defaulted because they were known at the time of Moua's state court appeals.  *See, e.g., McCall*, 114 F.3d at 757; *Gill*, 2008 WL 4371378, at *2–3; (Moua's Brief to the Minnesota Court of Appeals); (Moua's *Pro Se* Supplemental Brief to Minnesota Court of Appeals); (Moua's Pet. for Review to Minnesota Supreme Court).  Accordingly, Moua's argument that the prosecutor exhibited racism against him is unexhausted and procedurally defaulted as it was not raised below and could have been.

argument as a federal constitutional issue in his state court appeals, instead he was characterized it as an abuse of discretion by the trial court. (Moua's Br. to the Minn. Ct. App. at 8, 29–35); (Moua's Pet. for Review to Minn. Supreme Ct. at 213, 218). The Minnesota courts, therefore, were not alerted to any federal component of Moua's prosecutorial misconduct claims and Moua's claims are unexhausted. *McCall*, 114 F.3d at 757; *Gill*, 2008 WL 4371378, at *2–3.

Moua did not fairly present his prosecutorial misconduct claims to the Minnesota state courts on his direct appeal when the claims were known at the time of appeal because the conduct at issue occurred at trial. *See McCall*, 114 F.3d at 757; *Baldwin*, 541 U.S. at 29. Moua's prosecutorial misconduct arguments are precluded from additional review in Minnesota state courts under the same Minnesota law, outlined above, that prevented hearing of Moua's ineffective assistance of counsel and speedy trial/prosecutorial misconduct claims; Moua's prosecutorial misconduct claims are therefore procedurally barred. Thus, Moua's prosecutorial misconduct claims are barred from federal habeas review unless cause and prejudice or a miscarriage of justice can be shown. Moua has not made those arguments and the record does establish cause and prejudice or a miscarriage of justice.

### 4.    Moua's English-as-a-Second-Language Arguments

Moua argues that his rights were violated because of his lack of understanding of English. (Pet. at 7). Moua states that he does not know the English language and was not given help or an interpreter. (*Id.* at 5). Moua, however, does not explain which of his rights were violated by his failure to understand English. *See* (Pet.). In addition, this claim was not raised explicitly in any of Moua's briefs to the Minnesota Court of Appeals or to the Minnesota Supreme Court. *See* (Moua's Br. to the Minn. Ct. App.); (Moua's *Pro Se* Supplemental Br. to the Minn. Ct. App.); (Moua's Pet. to the Minn. Supreme Ct.).

Because of the liberal construction accorded *pro se* submissions, the Court addresses Moua's statements as a challenge to the district court's finding that Moua voluntary, knowingly, and intelligently waived his *Miranda* rights in spite of his language issues.  Presumably, Moua's argument is that his waiver was invalid because he did not have an interpreter.[10]  The Court only reviews Moua's arguments concerning whether his language difficulties caused a violation of his *Miranda* rights.  *See Stone*, 364 F.3d at 914 (explaining that courts are to liberally construe *pro se* filings but are not to craft arguments for *pro se* parties based on facts that are not alleged).  Moua argued at the Minnesota Court of Appeals that his language difficulties required an interpreter to be provided for his interrogation and the failure to do so violated Minnesota statute and the federal constitutional rights protected by *Miranda*.  *Moua*, 2012 WL 2505744, at *2–3.  Moua, however, did not raise the failure to provide an interpreter as a claim in his petition for review to the Minnesota Supreme Court.[11]  *See* (Moua's Pet. to the Minn. Supreme Ct.).  In his brief to the Minnesota Supreme Court, Moua only challenged the Court of Appeals determination that after a suspect expresses confusion and no further explanation or discussion is given by police, a waiver of the suspect's *Miranda* rights can be knowing and intelligent.  (*Id.* at

---

[10]    The Court addresses this argument because of Moua's *pro se* status, the fact that argument had been made to the Minnesota courts that Moua's language difficulties contributed to violation of his *Miranda* rights, and because Moua addressed *Miranda* in his supplemental filings to the Court.

Moua also argued at the Minnesota Court of Appeals that the trial court's finding was erroneous because Moua had indicated that he was confused about his rights.  *Moua*, 2012 WL 2505744 at *3–4.  The Court does not address this argument because it is not raised in Moua's Petition.  *Stone*, 364 F.3d at 914 ("Though *pro se* complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced.") (citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285 (1976); *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).  The Court will not provide additional facts for *pro se* litigants nor will the Court construct legal theories for a *pro se* plaintiff that is based on facts that have not been alleged.  *Id.* (citations omitted).

[11]    Moua's petition for review to the Minnesota Supreme Court addresses the *Miranda* issue only to challenge the fact that the interrogation resumed after Moua explicitly expressed confusion about his rights and was provided no clarification.  (Moua's Brief to the Minnesota Supreme Court at 213, 215–16).

213, 215–16).   Even given the Court's liberal construction of Moua's argument, because Moua did not present his English language constitutional claim to the Minnesota Supreme Court; the claim therefore is unexhausted.  *See Baldwin*, 541 U.S. at 29; *Gill*, 2008 WL 4371378, at \*2–3.

Moua did not fairly present his English-as-a-second-language claims to the Minnesota state courts on his direct appeal when the claims were known at the time of appeal because the conduct at issue occurred at the trial stage.  *See Baldwin*, 541 U.S. at 29; *McCall v. Benson*, 114 F.3d at 757.  Moua's English-as-a-second-language arguments are precluded from additional review in Minnesota state courts under the same Minnesota law, outlined above, that prevented hearing of Moua's other claims; Moua's English-as-a-second-language claims are therefore procedurally barred.  Thus, Moua's English-as-a-second-language claims are barred from habeas review unless cause and prejudice or a miscarriage of justice can be shown.  Moua has not made those arguments and the record does establish cause and prejudice or a miscarriage of justice.[12]

### 5.      Exceptions to Procedural Default

A procedurally defaulted claim may be entertained if the petitioner can demonstrate "cause and prejudice" to excuse the procedural default or, alternatively, that a "fundamental miscarriage of justice" would result if the federal court declined to consider the claim.  *Coleman*, 501 U.S. at 749–50.  Moua fails to establish that either exception applies to excuse his procedurally defaulted claims.

To establish cause and prejudice a petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law."  *Id.* at 750.  Moua has not cited any

---

[12]      To the extent Moua is making a different argument about which of his rights were violated due to his lack of understanding of English, these claims are unexhausted because they were not raised on appeal to the state courts and are also procedurally defaulted because they were known at the time of Moua's state court appeals.  *See, e.g.*, *McCall*, 114 F.3d at 757; *Gill*, 2008 WL 4371378, at \*2–3; (Moua's Brief to the Minnesota Court of Appeals); (Moua's *Pro Se* Supplemental Brief to Minnesota Court of Appeals); (Moua's Pet. for Review to Minn. Supreme Ct.).

legally sufficient reason to excuse his procedural default and nothing before the Court suggests that his failure to properly present his claims was the result of any external impediment. Therefore, Moua failed to satisfy the "cause" component of the cause and prejudice exception, and it is unnecessary to consider whether he could satisfy the actual prejudice component. *See Ashker v. Class*, 152 F.3d 863, 871 (8th Cir. 1998).

To qualify for the application of the "fundamental miscarriage of justice" or actual innocence exception, Moua must demonstrate "that a constitutional violation has probably resulted in the conviction of one who is actually innocent." *McCall*, 114 F.3d at 758 (citations and quotations omitted). Moua has failed to do so. His current claims for relief allege only legal errors at his trial that purportedly deprived him of certain of his rights. Therefore, Moua cannot overcome his procedural default by way of the actual innocence exception.

All of Moua's claims are procedurally defaulted. Moua's procedurally defaulted claims cannot be excused based on either cause and prejudice or a fundamental miscarriage of justice. Accordingly, the Court concludes that neither of Moua's procedurally defaulted habeas corpus claims can be entertained.

## III.    CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal a denial of his petition unless he is granted a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. Daniel*, 529 U.S. 473, 484 (2000). In this case, the Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Moua's claims any differently than they have been decided here. Moua

has not identified, (and the Court cannot independently discern) anything novel, noteworthy or worrisome about this case that warrants appellate review. It is therefore recommended that Moua not be granted a COA in this matter.

## IV.   RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Moua's Petition for habeas relief under 28 U.S.C. § 2254, [Doc. No. 1] be **DENIED**;

2. The State of Minnesota's Motion to Dismiss [Doc. No. 7] be **GRANTED**; and

3. If this Report and Recommendation is adopted, a COA should not issue, and judgment should be entered accordingly.


Dated: December 12, 2013          *s/ Steven E. Rau*_____
                                  Steven E. Rau
                                  United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 3, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.

*Appendix: Summary of Moua's Post-Petition Submissions to the Court*

First, Moua filed a Letter on September 6, 2013, seeking assistance completing forms due to his alleged lack of understanding of English.  (Letter to Magistrate Judge Rau Dated Sept. 6, 2013) [Doc. No. 11].  Next, Moua filed his "Motion under 28:2255 to Vacate, Aside, or Correct Sentence by a Person in Federal Custody," which was reviewed and determined to be a motion for assistance of counsel.  (Mot. to Vacate, Aside, or Correct Sentence) [Doc. No. 12]; (Order Dated Oct. 17, 2013) [Doc. No. 28].  The Court denied Moua's Motion, finding that the legal issues raised in his Petition were not so complex that appointment of counsel was warranted and that Moua's submissions to the Court evidence his ability to investigate and articulate the legal and factual bases of his claims.  (Order Dated Oct. 17, 2013 at 2).

Moua filed a Statement of Facts, which is actually a portion of the factual summary from the brief he filed at the Minnesota Court of Appeals with some handwritten notes by Moua largely concerning the trial court judge's decision to provide him an interpreter, a statement presumably written by Moua about the incident underlying his conviction and his interrogation, a statement of probable cause from a Complaint filed in Moua's case, a transcript of the interview between Moua and Sergeant Meffert leading to the statements along with notes taken by him, and a statement presumably written by Moua about the underlying facts of the case and his interrogation.  (Statement of Facts) [Doc. No. 13]; *see also* (Moua's Brief to Minnesota Court of Appeals).

Moua submitted a document entitled "Prosecutorial's Memorandum Notice Motion for Prosecutor Misconduct, Violations Petitioner's Constitution Right" where Moua summarizes facts from other encounters with law enforcement that are not the subject of the conviction for which he is seeking habeas review.  [Doc. No. 14].

Moua submitted a second document entitled "Prosecutorial's Memorandum Notice Motion for Prosecutor Misconduct, Violations Petitioner's Constitution Right" where Moua claimed his constitutional right to a speedy trial was violated and constitutes prosecutorial misconduct. [Doc. No. 15].

Moua submitted a document entitled "Prosecutor, Illegal Obtained Priority Evidence of Impeachment" where he argues that the Prosecutor improperly used his past convictions against him for impeachment at his trial and he also alleges racial and ethnic discrimination and also advances arguments about the evidence in his case. [Doc. No. 16].

In an October 7, 2013 Letter to the Clerk of Court's office, Moua again requests counsel be appointed and also includes arguments that there has been improper witness coercion in his case. [Doc. No. 17].

Moua submitted a document entitled "Prosecutor Misconduct" where he includes argument concerning the existence of prosecutorial misconduct in his case, a notice of intent to impeach with prior convictions that was presumably given to him in his case, as well as multiple arguments concerning his case. [Doc. No. 18].

In a document entitled "Ineffective Assistance of Claim and State Court Documents Filed" Moua argues that he received incompetent representation by Lyndee Kamrath for failure to investigate, failure to consult with Moua, failure to challenge to prosecution, claims related to presentation in plea bargaining, failure to challenge the composition of the jury, failure to object to the prosecution, failure to make post-conviction motions, and Lyndee Kamrath's pecuniary interest in possible future business that created a conflict of interest. [Doc. No. 19]. Moua also included a Motion for Dismissal of Kamrath that he filed with the state court where he seeks dismissal of Kamrath for ineffective assistance of counsel and argues that she told him to plead

guilty, has not adequately represented him, and has many conflicts of interest.  (*Id.*).

Moua filed a document entitled "New Twist on *Miranda*" where he again makes arguments concerning what he claims to be prosecutorial misconduct.  [Doc. No. 20].

Moua submitted another Letter to the Clerk of Court seeking assistance of counsel and advancing the same arguments that he advanced in his other letter to the Clerk of Court.  [Doc. No. 21].

Moua included much of the same information that he had submitted in Doc. No. 16 and again advanced misconduct arguments against Lyndee Kamrath in another letter.  [Doc. No. 22].

Moua filed a document entitled "Argument" where he advances substantially the same arguments that he advanced in other docket entries.  [Doc. No. 23].

Finally, Moua filed a Letter to Magistrate Judge Rau where he expresses disagreement with the Court's October 17, 2013 Order that he not be appointed counsel because Moua asserts that his case is criminal not civil and again asserts that he does not fully understand English as it is his second language.  (Letter Dated Oct. 30, 2013) [Doc. No. 29].